UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION at COVINGTON

CIVIL ACTION NO. 10-175-GWU

MARY RUTH THOMPSON,                                                                                 PLAINTIFF,

VS.                             **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,                             DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of her application for Disability Insurance Benefits (DIB). The appeal is currently before the court on cross-motions for summary judgment.

## APPLICABLE LAW

The Commissioner is required to follow a five-step sequential evaluation process in assessing whether a claimant is disabled.

1. Is the claimant currently engaged in substantial gainful activity? If so, the claimant is not disabled and the claim is denied.

2. If the claimant is not currently engaged in substantial gainful activity, does he have any "severe" impairment or combination of impairments--i.e., any impairments significantly limiting his physical or mental ability to do basic work activities? If not, a finding of non-disability is made and the claim is denied.

3. The third step requires the Commissioner to determine whether the claimant's severe impairment(s) or combination of impairments meets or equals in severity an impairment listed

1

        in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the Listing of Impairments).  If so, disability is conclusively presumed and benefits are awarded.

4.      At the fourth step the Commissioner must determine whether the claimant retains the residual functional capacity to perform the physical and mental demands of his past relevant work.  If so, the claimant is not disabled and the claim is denied.  If the plaintiff carries this burden, a prima facie case of disability is established.

5.      If the plaintiff has carried his burden of proof through the first four steps, at the fifth step the burden shifts to the Commissioner to show that the claimant can perform any other substantial gainful activity which exists in the national economy, considering his residual functional capacity, age, education, and past work experience.

20 C.F.R. §§ 404.1520; 416.920; Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984); Walters v. Commissioner of Social Security, 127 F.3d 525, 531 (6th Cir. 1997).

    Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence.  Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight.  Garner, 745 F.2d at 387.

In reviewing the record, the court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step four refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform,

then an award of benefits may, under certain circumstances, be had. E.g., <u>Faucher v. Secretary of Health and Human Services</u>, 17 F.3d 171 (6th Cir. 1994).  One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. § 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental

contaminants . . . rote application of the grid [guidelines] is inappropriate . . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid.  Id. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985).  Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments.  Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

**DISCUSSION**

The plaintiff, Mary Ruth Thompson, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of back strain, depression and asthma.  (Tr. 15).  Nevertheless, based in part on the testimony of a Vocational Expert (VE), the ALJ determined that Mrs. Thompson, while unable to return to any of her past relevant work, retained the residual functional capacity to perform a significant number of other jobs existing in the economy, and therefore was not

entitled to benefits. (Tr. 17-21). The Appeals Council declined to review, and this action followed.

The plaintiff's ultimate residual functional capacity as set out in the hearing decision contemplated that she was capable of performing light level exertion, and also had the following non-exertional characteristics. She: (1) could perform no repetitive bending, twisting, or climbing of ropes, scaffolds, or ladders; (2) could occasionally balance, crouch, kneel, and crawl; (3) had to avoid temperature extremes, concentrated dust, fumes, chemicals, hazardous machinery, heights, and whole body vibration; and (4) was limited to the basic mental demands of competitive, remunerative, unskilled work, which included the ability to understand, remember, and carry out simple instructions, make judgments commensurate with the functions of unskilled work (i.e., simple work-related decisions), respond appropriately to supervision, coworkers, and work situations, and deal with changes in a routine work setting. (Tr. 17).

As the plaintiff points out, it is not clear that the hypothetical mental limitations were provided to the VE. At the administrative hearing, the ALJ posited three hypothetical questions, the first of which clearly includes the mental limitations. (Tr. 48-9). However, it assumes that the individual had none of the environmental limitations ultimately found by the ALJ, and assumes that she was

capable of "frequently" balancing, kneeling, crouching, crawling, stooping, and climbing ramps and stairs. (Tr. 48).

The ALJ 's second hypothetical question asks the VE to consider a person limited to light level exertion with no repetitive bending and twisting, no climbing of ladders, ropes, or scaffolds, a need to avoid hazards and environmental irritants, but says nothing regarding the other postural limitations and nothing regarding mental restrictions. (Tr. 50).[1]

While the defendant suggests that the mental restrictions in the first hypothetical were impliedly associated with the second hypothetical, this is not apparent to a reviewer of the cold transcript. Nor does it explain the omission of some of the postural restrictions. Therefore, on this basis alone, a remand will be required for further consideration.

The plaintiff also makes some additional objections to the administrative decision which will be addressed briefly.

The plaintiff argues that it was erroneous to rely on reviewing state agency psychologists in determining her mental restrictions, in view of the fact that the experts did not have the benefit of a review of all the evidence and because they reportedly gave great weight to a one-time examining source, Dr. Robert Noelker.

---

[1] The third hypothetical question contained restrictions to less than full-time sitting, standing, and walking and the VE testified that such a person could not perform full-time employment. (Tr. 51-2).

(Tr. 20, 341). Dr. Noelker had concluded that the plaintiff suffered from a pain disorder associated with both psychological factors and a general medical condition and a depressive disorder. (Tr. 337). He assigned a current Global Assessment of Functioning (GAF) score of 50, reflecting "serious symptoms" or "any serious impairment in social, occupational, or school functioning" per the <u>Diagnostic and Statistical Manual of Mental Disorders</u> (4th Ed.--Text Revision), p. 34. He felt that her condition would be chronic, and in terms of functional capacity, opined that Mrs. Thompson's ability to sustain concentration and persistence would be moderately to severely impaired, and her ability to adapt to and tolerate pressures normally found in day-to-day work settings was severely impaired. (Tr. 337). Her ability to sustain social interactions would be moderately impaired "at times," and her ability to understand simple one- and two-step instructions was said to be mildly to moderately impaired. (Id.).

The only rationale given by a state agency psychological reviewer, Dr. Edward Stodola, for finding no more than "moderate" mental restrictions was that Dr. Noelker's "[mental source statement] notes a severe impairment without indicating marked mental restrictions [and a]s such, it is consistent with the evidence and assigned great [weight]." (Tr. 341). This rationale is difficult to reconcile with Dr. Noelker's reference to "severe" and "moderate to severe" impairments in two areas of functioning.

Moreover, a subsequent evaluation by Dr. David Roebker, another psychologist, contained the same diagnoses as Dr. Noelker, a GAF score of 52, and a statement that Mrs. Thompson's restrictions would include a poor capacity to cope with stress and demands placed on her, as well as poor reliability, concentration, attention to detail, and memory. (Tr. 393). An initial evaluation by a source at NorthKey Community Care, a mental health clinic, does not list specific restrictions but does contain a GAF score of 50, consistent with Dr. Noelker. It does not appear that either of the state agency mental health reviewers saw this additional evidence, which is suggestive of greater restrictions than they found, and which were, in turn, accepted by the ALJ.

While the Commissioner argues that the ALJ was not bound either by the state agency sources or by one-time examiners, see 20 C.F.R. § 404.1527(d); (f), the fact that neither the non-examining sources or the ALJ felt that their opinions were inconsistent with the reports of the examiners, when in fact they are irreconcilable, leaves open the possibility that some of the evidence could have been overlooked. This is a matter that can be addressed on remand.

Finally, the plaintiff maintains that the ALJ should have given controlling weight to a functional capacity questionnaire form submitted by her treating family physician, Dr. Gary Melton, on July 13, 2009. (Tr. 657-61). The limitations given by Dr. Melton, when given to the VE, resulted in testimony that the plaintiff could not

9

perform full-time gainful employment. (Tr. 51-2). Mrs. Thompson asserts that Dr. Melton's opinion was entitled to the deference due a treating source, and that the ALJ did not give "good reasons" for rejecting it, as required by <u>Wilson v. Commissioner of Social Security</u>, 378 F.3d 541, 546 (6th Cir. 2004). While Dr. Melton did note some objective findings in his report, primarily spasms in the cervical and lumbar areas (Tr. 657), the ALJ explained at some length that the bulk of the objective evidence did not support the degree of limitations alleged by the plaintiff or by Dr. Melton. He noted relatively benign results on MRI scans of the lumbar span, which did not show any changes after four years, negative nerve conduction velocity testing of the legs, indicating no lumbar radiculopathy and the fact that Dr. Melton had previously made inconsistent statements. (Tr. 19, 206, 217, 233-4, 278-9, 282, 290, 568).

Assuming, for the sake of argument, that Dr. Melton's restrictions were properly discounted, <u>another</u> treating source, Dr. Brad Mullen, concluded after almost a year of treatment that despite the negative objective studies, Mrs. Thompson's physical examination did show significant bilateral joint tenderness at the sacroiliac joints and that her restrictions would be consistent with a functional capacity evaluation which had previously been conducted. (Tr. 358-60). The functional capacity evaluation results are not entirely legible in the court transcript but appear to indicate that some of the plaintiff's lifting and carrying abilities were

at less than the light level found by the ALJ.  (Tr. 288-9).  Since Dr. Mullen was the treating source who endorsed the results of the functional capacity evaluation, this is also a matter that should be resolved on remand.

The decision will be remanded for further consideration of the issues outlined in this opinion.

This the 15th day of June, 2011.

Signed By:
*G. Wix Unthank*
United States Senior Judge